******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

REDDING LIFE CARE, LLC *v.* TOWN OF REDDING
(AC 37928)

DiPentima, C. J., and Prescott and Beach, Js.

*Argued January 6—officially released June 27, 2017*

(Appeal from Superior Court, judicial district of New Britain, Schuman, J.)

*Proloy K. Das*, with whom were *Robert E. Kaelin*, *Joseph B. Schwartz* and, on the brief, *Sarah Gruber*, for the plaintiff in error (David R. Salinas).

*Elliott B. Pollack*, with whom, on the brief, was *Tiffany K. Spinella*, for the defendant in error (town of

Redding).

*Opinion*

BEACH, J. The plaintiff in error, David R. Salinas, an appraiser, provided two opinions to banks regarding the value of a certain property. In a subsequent, unrelated tax appeal regarding that property, a party sought to compel him to testify in a deposition regarding those opinions. The issue presented in this writ of error is whether an expert, who previously has rendered an opinion on an issue material to a later, unrelated case in which neither party has engaged his services, may be compelled by subpoena to provide an opinion in that case. We hold that Connecticut recognizes a qualified testimonial privilege for unretained expert witnesses and, accordingly, we grant the writ of error and remand the case for further proceedings.

The record reveals the following undisputed facts and procedural history. In April, 2013, Redding Life Care, LLC (Redding Life), initiated an action against the defendant in error town of Redding (town) to challenge the town's assessment of a property owned by Redding Life (tax appeal). Prior to the initiation of that action, Salinas had completed two appraisals of that property on behalf of banks that were considering lending to Redding Life. In July, 2014, after learning about these appraisals, the town filed a motion for commission[1] to depose Salinas. Redding Life and CapitalSource Bank, a nonparty to the tax appeal and one of the banks for which Salinas had conducted an appraisal, objected. The trial court, *Hon. Arnold W. Aronson*, judge trial referee, granted the town's motion.

Approximately four months later, the town served Salinas with a subpoena compelling him to appear at a deposition scheduled for January, 2015. Salinas filed a motion for a protective order seeking to prohibit the town from taking his deposition. He argued that he had not been retained in the tax appeal, did not have any relevant knowledge, and could not be compelled to testify as an expert. He specifically argued that Connecticut law "prohibit[s] the compulsion of unretained expert testimony," and referred the court to the decisions in *Drown* v. *Markowitz*, Superior Court, judicial district of Hartford, Docket No. CV-05-4010740 (August 18, 2006) (41 Conn. L. Rptr. 855, 856), which relied on the reasoning from other jurisdictions that " 'absent extraordinary circumstances . . . a nonparty expert cannot be compelled to give opinion testimony against his or her will,' " and *Hill* v. *Lawrence & Memorial Hospital*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. HHD-X04-CV-4034622-S (June 30, 2008) (45 Conn. L. Rptr. 789, 792), which held that "[i]n the absence of compelling necessity, the fact that the [experts] are likely to have formed opinions is an insufficient basis on which to require them to be expert witnesses."[2] The town objected.

The court rejected Salinas' argument, denied his motion, and ordered the following: "The deposition shall proceed. The town shall pay the witness his fees and expenses as provided in Practice Book § 13-4 (c) (2). The town shall enter into any reasonable protective order proposed by the witness or the other parties designed to limit the use of the information obtained in the deposition to this case only." Salinas subsequently filed a motion seeking the following articulation: "Did the trial court conclude that . . . Salinas can be compelled under Connecticut law to provide expert witness testimony against his will? If so, what is the basis for that conclusion?" The court responded as follows: "The answer to the first question is no. It was unnecessary to reach that conclusion because [Salinas] had already authored appraisals that contained his opinions."

Salinas filed a writ of error with our Supreme Court on February 3, 2015, seeking appellate review of the trial court's denial of his motion for a protective order. The town filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the court's discovery order did not constitute an appealable final judgment. Our Supreme Court transferred the matter to this court, and this court denied the town's motion.

Salinas argues that the court erred in failing to recognize that an unretained expert privilege[3] exists under Connecticut common law and, consequently, erred in denying his motion for a protective order. He notes that, although Connecticut appellate courts have not addressed directly the question whether an unretained expert privilege exists under Connecticut common law, several Superior Court decisions have recognized such a privilege. Salinas also argues that, if this court holds that such a privilege does exist, the privilege is absolute. In the alternative, he argues that there should be a qualified privilege that "can only be overcome by an affirmative showing of 'compelling need.' "

The town responds that "[t]here is no need for this court to opine whether any unretained nonparty expert testimonial privilege exists in Connecticut with regard to potential trial testimony at this time," because, as the court noted in its articulation, Salinas' testimony, regardless of whether it is admissible at trial, is discoverable because it " 'appears reasonably calculated to lead to the discovery of admissible evidence'; Practice Book § 13-2; especially under the liberal standard that applies to discovery in civil cases."[4] The town then argues that, if we do address the issue of privilege, we are bound by the precedent of *Thomaston* v. *Ives*, 156 Conn. 166, 239 A.2d 515 (1968). In that case, the town posits, our Supreme Court held that the question of whether a privilege exists should be determined on a case-by-case basis, and that if a privilege does exist, it is never absolute. We agree with Salinas that an unre-

tained expert privilege does exist under Connecticut common law, but we hold that it is a qualified privilege rather than an absolute privilege.

We begin our analysis by setting forth the standard of review. The question of whether an unretained expert privilege exists, and, if it does, whether that privilege is absolute, are questions of law. See *Hutchinson* v. *Farm Family Casualty Ins. Co.*, 273 Conn. 33, 38, 867 A.2d 1 (2005) ("[w]hether the trial court properly concluded that there is an exception to the attorney-client privilege when an insured has made an allegation of bad faith against an insurer . . . and, if so, whether it properly delineated the scope and contours of such an exception, are questions of law"); see also *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 169, 757 A.2d 14 (2000) (whether court should recognize civil fraud exception to attorney-client privilege and limitations on exception are questions of law). Accordingly, our review is plenary.

We turn first to the issue of whether we should recognize an absolute privilege. Connecticut appellate courts have not yet addressed directly whether an unretained expert privilege exists under Connecticut law. See C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 7.13, p. 485. Salinas argues that we should recognize an absolute unretained expert privilege.[5] On the basis of *Milliun* v. *New Milford Hospital*, 129 Conn. App. 81, 108–109, 20 A.3d 36 (2011), aff'd on other grounds, 310 Conn. 711, 80 A.3d 887 (2013), however, we decline to recognize an absolute privilege.

In *Milliun*, this court held that nonparty physicians could be compelled to testify as expert witnesses for the plaintiff conservator in a professional negligence action regarding the bases for medical opinions they previously formed after treating the conserved person. Id., 108–109. In that case, the plaintiff alleged that, while in the defendant hospital's care, the conserved person suffered an "anoxic incident" which resulted in her cognitive impairment. Id., 85. Subsequent to this incident, but prior to initiating the underlying action against the defendant, the conserved person sought treatment from physicians at the Mayo Clinic for the purpose of determining whether the anoxic incident had caused her impairment.[6] Id., 85–86. The defendant hospital attempted to assert an expert privilege on behalf of the physicians, and argued that the physicians' testimony regarding causation was barred by the privilege. Id., 107.

This court determined that the physicians could be compelled to testify for three reasons: (1) the defendant had asserted the privilege rather than the physicians; (2) a categorical rule permitting *treating* physicians to refuse to testify at a deposition would be contrary to "our liberal discovery rules"; and (3) because there was no justification for a rule that would "wholly" exempt experts from testifying about previously formulated

opinions, the court did not wish "to create a testimonial privilege that would prevent such witnesses from being deposed in the present case." (Internal quotation marks omitted.) Id., 107–109. Consistent with our holding and the underlying reasoning in *Milliun*,[7] then, we decline to recognize an absolute privilege for unretained expert testimony in this case.

Salinas argues in the alternative, however, that we should recognize a qualified privilege. He asks this court to recognize a "broader qualified privilege" with a "compelling need exception," as defined by the Wisconsin Supreme Court in *Burnett* v. *Alt*, 224 Wis. 2d 72, 589 N.W.2d 21 (Wis. 1999). (Internal quotation marks omitted.) "Under [a] broader qualified privilege, an expert may be forced to provide expert testimony but only if the compelling party affirmatively demonstrate[s] some compelling necessity for an expert's testimony that overcomes the expert's and the public's need for protection. . . . Furthermore, an expert only can be compelled to give previously formed opinions and cannot be required to engage in any out-of-court preparation." (Citations omitted; internal quotation marks omitted.) Id., 87–88. With this assertion, we agree.

We first observe that the issue of a qualified privilege was not presented in *Milliun*. In introducing the issue in that case, this court stated, "[t]he defendant contends that the treating physicians enjoyed *an absolute privilege* not to be pressed into service as experts for the plaintiff." (Emphasis added.) *Milliun* v. *New Milford Hospital*, supra, 129 Conn. App. 107. In its discussion, as noted previously, this court agreed that there was no justification for treating physicians to be "wholly exempt" from providing information. (Internal quotation marks omitted.) Id., 109. Our decision in that case, however, was not inconsistent with the existence of a qualified unretained expert privilege. This case provides us with an opportunity to clarify whether a qualified privilege exists.

Several Superior Court decisions have recognized a qualified unretained expert privilege. These decisions have held that an unretained expert called as a witness against his or her will may be questioned regarding his or her own conduct and observations, but, without more, cannot be questioned more generally on matters with which he or she is conversant as an expert. See *Hill* v. *Lawrence & Memorial Hospital*, supra, 45 Conn. L. Rptr. 792 (plaintiff prohibited from questioning treating physicians about damages or causation, but could question them about their own conduct and treatment of decedent); *Drown* v. *Markowitz*, supra, 41 Conn. L. Rptr. 856 (plaintiff could depose decedent's treating physician regarding her own conduct and to "facts that she knows," but not "her opinion as to those facts or standard of care of anyone except herself"); see also *Izquierdo* v. *KIA Motors America, Inc.*, Superior Court,

judicial district of Tolland, Docket No. X07-CV-000075599-S (June 16, 2003) (plaintiff could not require witness to render expert opinion regarding whether brake system was defective and whether defect proximately caused car accident). In recognizing a qualified privilege, these decisions have drawn from the widely cited reasoning of the Wisconsin Supreme Court in *Alt* as well as the reasoning of our Supreme Court in *Thomaston* v. *Ives*, supra, 156 Conn. 166.

In determining that an unretained expert privilege exists under Connecticut law, the court in *Drown* v. *Markowitz*, supra, 41 Conn. L. Rptr. 856, identified a similarity between a provision in the Connecticut Practice Book and the Wisconsin statute that served as the basis for the unretained expert privilege under Wisconsin law. In *Burnett* v. *Alt*, supra, 224 Wis. 2d 86, the Wisconsin Supreme Court recognized the existence of the unretained expert privilege on the basis of a statute that stated that "[a]n expert witness shall not be appointed by the judge unless the expert witness consents to act."[8] (Emphasis omitted.) The court in *Alt* noted that "[i]f a court cannot compel an expert witness to testify, it logically follows that a litigant should not be able to so compel an expert," and stated that "this express grant implies a privilege to refuse to testify if the expert is called by a litigant." Id. In *Drown*, a Connecticut court noted that Practice Book § 42-39, which provides in relevant part that "[a]n expert witness shall not be appointed by the judicial authority unless the expert consents to act," is nearly identical to that Wisconsin statute. *Drown* v. *Markowitz*, supra, 856. The court in *Drown* accordingly held that § 42-39 provides a basis for recognizing an unretained expert privilege under Connecticut law.[9] Id.

In *Hill* v. *Lawrence & Memorial Hospital*, supra, 45 Conn. L. Rptr. 790, the Superior Court found a basis for the unretained expert privilege in our Supreme Court's holding in *Thomaston* v. *Ives*, supra, 156 Conn. 166. In *Thomaston*, an appraiser who had been hired by the defendant state highway commissioner to appraise the damages arising from a taking of certain property by the state was compelled by the plaintiff to testify as an expert concerning the value of the condemned property. *Thomaston* v. *Ives*, supra, 168. Our Supreme Court affirmed the judgment requiring that the appraiser testify, but carefully limited its holding, noting that "[t]his is not to be taken to mean that every expert witness is to be held to the same requirement. The wide diversity of subjects on which expert opinion may be required and the varying circumstances under which the opinion may be sought militate against any such sweeping generalization." Id., 174. The court specifically noted that the purpose of an eminent domain proceeding is "to ensure that the property owner shall receive, and that the state shall only be required to pay, the just compensation which the fundamental law promises the owner

for the property," and that, therefore, "[a]ll material and relevant information which will assist the trier in determining the sum of money which will constitute that just compensation should, in justice to both parties, be made available . . . ." Id. The court reasoned that an appraiser hired by the state specifically to appraise the damages arising from a taking would expect, in the normal course of events, to be called to testify about the value of that property in a subsequent eminent domain proceeding in which the state, which had hired him, was a party. Id. As such, the court reasoned, the appraiser appropriately could be compelled to testify at that proceeding. Id.

In *Hill* v. *Lawrence & Memorial Hospital*, supra, 45 Conn. L. Rptr. 790, 792, the court applied the reasoning set forth in *Thomaston* but reached a different result under the facts of that case. In *Hill*, two nonparty treating physicians were called as expert witnesses in a professional negligence action against the defendants, a hospital, a radiology practice and another physician. Id., 789. The court determined that a treating physician, as perhaps opposed to an expert hired by an adversary, would not, in the normal course of events, expect to be called as an expert witness in a professional negligence action against a hospital and another treating physician. Id., 790. The court held that the nonparty treating physicians could not be compelled to testify as experts in the underlying action. Id., 792.

In reaching this conclusion, the court in *Hill* also drew from the reasoning of the Wisconsin Supreme Court in *Burnett* v. *Alt*, supra, 224 Wis. 2d 72. In *Alt*, the court held that a qualified unretained expert privilege existed under Wisconsin law, such that an expert could not be compelled to serve as a witness, absent a compelling need for his or her testimony. Id., 89. That court noted that "[u]nlike factual testimony, expert testimony is not unique and a litigant will not be usually deprived of critical evidence if he cannot have the expert of his choice." (Internal quotation marks omitted.) Id. The court determined that the compelling need requirement would properly strike a balance "between the right of expert witnesses to be free from testifying against their will and the needs of the court and litigants for testimony." Id., 88.

Applying this reasoning, the court in *Hill* determined that the two nonparty treating physicians could not be compelled to testify as experts, because the plaintiff had failed to show that there was a compelling need for their testimony. *Hill* v. *Lawrence & Memorial Hospital*, supra, 45 Conn. L. Rptr. 792. The plaintiff had argued that there was a compelling need for the expert testimony of the decedent's treating physicians because, in addition to being generally conversant as medical experts, the physicians had "unique insight concerning the decedent and would therefore be in the best position

to testify as to treatment and survivability." Id., 791. The court rejected this argument, noting that "[t]his part of the plaintiffs' argument, taken to its logical extension, would necessitate that any physician who treats a patient after alleged malpractice has occurred is required to become an expert witness in an ensuing malpractice action. Such a blanket requirement would be contrary to the distinction, cited in *Thomaston*, 'between the duty of a witness to testify to factual matter[s] within his knowledge and the imposition of a requirement that he voice his opinion concerning a subject with which he is conversant as an expert.' "[10] Id.

As set forth previously, the decisions of our Superior Court have conducted reasoned analyses in recognizing a qualified unretained expert privilege under Connecticut law. Although not bound by them, we find persuasive their reasoning, as well as the Wisconsin Supreme Court's decision in *Burnett* v. *Alt*, supra, 224 Wis. 2d 72, and hold that a qualified unretained expert privilege exists. Accordingly, the trial court here improperly denied Salinas' motion for a protective order.

We must next determine the scope of that privilege. "The appropriate scope of expert privilege requires a balance between the right of expert witnesses to be free from testifying against their will and the needs of the court and litigants for testimony." *Burnett* v. *Alt*, supra, 224 Wis. 2d 88. We believe that, in order to strike this balance properly, the trial court here should, in determining whether to grant Salinas' motion for a protective order because his testimony is appropriately barred by the qualified unretained expert privilege, consider (1) whether, under the circumstances, he reasonably should have expected that, in the normal course of events, he would be called upon to provide opinion testimony in subsequent litigation; and (2) whether there exists a compelling need for his opinion testimony in this case. Additional considerations may be relevant to the analysis, including, for example, whether he was retained by a party with an eye to the present dispute.

The writ of error is granted and the case is remanded to the trial court with direction to vacate the order denying the plaintiff in error's motion for a protective order, and for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] Salinas was residing in Florida.

[2] The issue of qualified privilege, then, was presented to the court, and both sides addressed *Drown* and *Hill*. The court had the opportunity to rule on the issue. Both Salinas and the town expressly addressed the issue of qualified privilege in their briefs to this court and at oral argument. Accordingly, the issue of qualified privilege was adequately preserved, we have an adequate record for review, and no party has suggested that it was not preserved.

[3] We use the phrase "unretained expert privilege" to mean a privilege that may be invoked by an expert to prevent the compelled disclosure of his or her opinion.

[4] We address this claim only briefly. Practice Book § 13-30 (b) explicitly

states that a deponent may be instructed not to answer "when necessary to preserve a privilege . . . ." In the circumstances of this case, the court ruled that Salinas had no privilege to preserve. Had the deposition proceeded, Salinas may have been placed in the unenviable position of either violating a putative privilege or disobeying a court order. Both parties have responsibly addressed the merits of the claimed privilege; we shall as well.

[5] Salinas presents the following definition of absolute privilege, which has been adopted by courts in other jurisdictions: "Under the absolute privilege the witness is only required to testify regarding his or her observations, just as any other witness. The witness is not compelled to give expert testimony even if the witness had formed opinions prior to the deposition and without additional study, experimentation, thought or reflection." (Internal quotation marks omitted.)

[6] In *Milliun*, "[the conserved person] had sought treatment at the Mayo Clinic . . . in connection with her cognitive health. At the Mayo Clinic, she first was seen by Kathleen M. McEvoy, a physician. McEvoy reported that [the conserved person] had brought extensive outside records with her, along with an investigative report from the department of health regarding the anoxic incident that occurred while she was in the care of the defendant. McEvoy's admittance notes indicated that the plaintiff also reported this event to her." *Milliun* v. *New Milford Hospital*, supra, 129 Conn. App. 85. When the conserved person returned to the Mayo Clinic three years later, "[Stefan A.] Dupont, a resident at the Mayo Clinic, reported in his neurology consult that her 'cognitive dysfunction . . . seems to have occurred because of anoxic encephalopathy suffered during her respiratory arrest [while in the defendant's care].' [Another physician's] evaluation echoed Dupont's conclusion. He reported as follows: 'It is my opinion that [the] cognitive impairment . . . is secondary to whatever event occurred or whatever transpired [while she was in the defendant's care]. . . . Therefore, one must conclude that her cognitive impairment was secondary to [that] event . . . .' " Id., 86.

[7] Our decision in *Milliun* was appealed to our Supreme Court. On appeal, that court determined, on the basis of representations made by the plaintiff during oral argument, that the issue of privilege was not before them. *Milliun* v. *New Milford Hospital*, 310 Conn. 711, 740, 80 A.3d 887 (2013). Because that court did not consider the issue of privilege, our decision stands. See id., 741.

[8] The court was referring to Wis. Stat. § 907.06 (1).

[9] We note that the Superior Court decisions discussed here predate our decision in *Milliun*. We nonetheless find them informative, though of course not binding, especially because the issue of qualified privilege was not expressly decided in *Milliun*. In *Patterson* v. *Midstate Medical Center*, Superior Court, judicial district of Hartford, Docket No. MMX-CV-10-6002374-S (August 21, 2012) (54 Conn. L. Rptr. 575, 575), which addresses the issue of expert privilege following our decision in *Milliun*, the court acknowledged that "there is no Connecticut appellate authority directly on point" on the issue of expert privilege. Although the court in *Patterson* held that a physician's testimony was not protected by an expert privilege, it did not hold that an expert privilege does not exist, and it based its decision on considerations similar to those outlined later in this opinion. Id., 576.

[10] We note that the fact of whether a newly retained expert had the opportunity to examine the patient, or other subject of inquiry, may have some bearing on the issue of compelling need.