******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# WILLIAM GHIO *v.* LIBERTY INSURANCE UNDERWRITERS, INC.
## (AC 44127)

Bright, C. J., and Alexander and Bishop, Js.

*Syllabus*

The plaintiffs in error, four individual insureds, filed a writ of error, challenging a discovery order issued by the trial court finding that the insureds had waived the attorney-client privilege as to all communications concerning the merits of the claims of the plaintiffs in the underlying action, W and J. In a prior action, W and J brought a claim against the insureds and their company, B Co., which owned an insurance policy issued by the defendant in error, L Co., which provided liability coverage for B Co. and its directors and officers. Pursuant to the policy, L Co. paid the costs of defending against W and J's action. Thereafter, L Co. denied that the policy provided coverage for any judgment in that action, and the insureds entered into a stipulated judgment assigning their rights under the policy to W and J and directed their attorney, E, to provide W and J with copies of all communications with L Co. regarding coverage under the policy, redacted as necessary to protect the attorney-client privilege. W and J then brought the underlying action against L Co., seeking to enforce the stipulated judgment, during which they served on L Co. a discovery request seeking all communications between L Co. and E regarding the prior action against the insureds. After L Co. informed W and J that the responsive documents were protected by the attorney-client privilege, the court held a discovery conference and ordered L Co. to produce all communications between L Co. and E that constituted statements of fact or related to the issue of insurance coverage. The insureds reviewed and redacted portions of the relevant documents and instructed L Co. as to which documents to withhold entirely, and L Co. provided the redacted documents and a privilege log to W and J. Thereafter, W and J filed a motion for summary judgment in the underlying action, in which they relied on certain privileged communications between E and L Co., which E had disclosed to them pursuant to the stipulated judgment in the prior action. Subsequently, L Co. notified the insureds that it would seek the court's permission to produce and disclose all communications between it and E regarding the merits of W and J's claims in the prior action to defend itself in the underlying action because the insureds had waived the attorney-client privilege by producing some communications on the same subject. Counsel for the insureds requested that L Co. identify specific documents that allegedly constituted waiver of that privilege, and L Co. identified six documents, two of which had been used in the motion for summary judgment. At a hearing on the privilege issue, the court, which noted that it had limited time to hear argument on the issue, concluded that the documents E provided to W and J waived the privilege, basing its decision solely on brief excerpts of documents read by L Co.'s attorney during the hearing without conducting an in camera review of the undisclosed documents to determine which were encompassed by the subject matter waiver. The court subsequently denied the motion for reconsideration filed by the insureds, and they filed a writ of error. *Held*:

1. Because the subject matter waiver rule is consistent with Connecticut's precedent and is based on the same fairness principle supporting the implied waiver rule, this court adopted it as the law in this state: the voluntary disclosure of a privileged attorney-client communication constitutes a waiver of the privilege as to all other communications concerning the same subject matter when the trial court has determined that the waiver was intentional and that fairness dictates that the disclosed and undisclosed communications be considered together; moreover, where a party asserts that the rule applies on the basis of disclosed communications, the court must review the relevant disclosed and undisclosed communications to determine whether a waiver has occurred and, if so, must determine the scope of that waiver through a fact intensive inquiry into the nature of the communications.

2. The trial court erred in not holding an evidentiary hearing and reviewing the communications in question:

a. The trial court abused its discretion in failing to review the actual documents on which the claim of waiver was based: given the parties' conflicting positions regarding the importance of the documents at issue, the court was required to review the relevant communications before issuing its ruling finding that the insureds had waived the privilege as to all communications regarding E's analysis of W and J's claims; moreover, if the court, following a review of the documents, determines that there had been a subject matter waiver, it would need to conduct an in camera review of the claimed privileged documents to determine which documents were covered by the waiver and should be produced; accordingly, this court remanded the case for an evidentiary hearing.

b. Because this court found error and remanded the case for an evidentiary hearing, it addressed the claims of the insureds likely to arise on remand: because not all of the communications were disclosed in compliance with a court order, on remand, the trial court was required to determine which privileged communications were voluntarily disclosed by the insureds and whether fairness requires that the voluntarily disclosed communications and any undisclosed communications regarding the same subject matters be considered together; moreover, because L Co. produced only those communications authorized by the insureds, which they had reviewed and redacted, its actions did not neglect its duty to protect the attorney-client privilege and its productions of communications could have constituted a subject matter waiver of the insureds' privilege; furthermore, although the insureds were not parties to the underlying action, they had an interest in the action notwithstanding their lack of status and, therefore, the subject matter waiver rule may properly be applied to them.

Argued December 2, 2021—officially released May 31, 2022

*Procedural History*

Writ of error from orders of the Superior Court in the judicial district of Hartford, *Moukawsher, J.*, ruling that the plaintiffs in error had waived the attorney-client privilege as to certain discovery materials and denying their motion for reconsideration, brought to the Supreme Court and transferred to this court. *Writ granted*; *further proceedings*.

*Proloy K. Das*, with whom were *Erik H. Beard*, and, on the brief, *Kevin W. Munn* and *Rachel Snow Kindseth*, for the plaintiffs in error (Paul Pendergast et al.).

*Ronald P. Schiller*, pro hac vice, with whom were *Bonnie M. Hoffman*, pro hac vice, and *Elizabeth M. Cristofaro*, for the defendant in error (Liberty Insurance Underwriters, Inc.).

*Opinion*

BRIGHT, C. J. With this writ of error, the plaintiffs in error, Paul Pendergast, J. Reid Gorman, Carlos Silva, and Charles Cox (insureds), challenge a discovery order issued in the underlying action, which was brought by William Ghio and Janet Ghio (collectively, the Ghios) against the defendant in error, Liberty Insurance Underwriters, Inc. (Liberty).[1] In a prior action, the Ghios settled their claims against the insureds and brought the underlying action against Liberty, which had issued an insurance policy to the insureds. Relevant to this writ of error, in the underlying action the Ghios sought the production of all communications between Liberty and the attorney who represented the insureds in the prior action, and the insureds instructed Liberty as to which of those communications to withhold as protected by the attorney-client privilege. Liberty, wishing to use certain of the designated privileged documents to defend itself in the underlying action, claimed that the insureds waived the privilege as to all communications concerning the merits of the Ghios' claims by selectively disclosing to the Ghios privileged communications on that subject. The trial court agreed and found that the insureds had waived the privilege as to all communications concerning the merits of the Ghios' claims, clearing the way for Liberty to use those communications in the underlying action.

In this writ of error, the insureds claim that the court improperly concluded that they waived the attorney-client privilege because (1) the communications were produced pursuant to a court order, (2) Liberty had a duty to preserve the privilege and, therefore, could not have waived the insureds' privilege by producing the communications, and (3) the court abused its discretion in finding that the privilege was waived without holding an evidentiary hearing or reviewing the relevant communications. We agree with the insureds' final claim and, accordingly, grant the writ of error and remand the case for an evidentiary hearing.

The record reveals the following facts and procedural history. The Ghios invested in the insureds' company, Back9 Network, Inc. (Back9), which owned an insurance policy issued by Liberty providing liability coverage for Back9 and its directors and officers (policy). In 2015, the Ghios brought an action against Back9 and the insureds, asserting claims related to their investment in Back9. Attorney Joshua Berman represented the insureds, and Liberty, pursuant to the policy, paid the insureds' costs of defending against the Ghios' claims.

In October, 2018, shortly before the scheduled trial, Attorney R. Stacy Lane, Liberty's coverage counsel, notified Berman that Liberty denied that the policy provided coverage for any judgment in the Ghios' action.

After receiving Lane's letter, the insureds and the Ghios entered into a stipulated judgment agreeing that judgment would enter for the Ghios in the amount of $1,901,056 and that the Ghios would seek to enforce the judgment against Liberty only. The court, *Graham, J.*, rendered judgment in accordance with the parties' agreement. Pursuant to the judgment, the insureds assigned their rights under the policy to the Ghios and directed Berman to provide the Ghios with copies of all communications with Liberty regarding coverage under the policy, redacted as necessary to protect any applicable privilege.

In December, 2018, the Ghios brought the underlying action against Liberty[2] pursuant to General Statutes § 38a-321.[3] In their three count amended complaint, the Ghios sought to enforce the stipulated judgment and alleged that Liberty had acted in bad faith and violated the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq. Liberty filed an answer and special defenses, as well as a counterclaim seeking a declaratory judgment that it does not have an obligation to pay the judgment against the insureds.

During discovery, the Ghios served on Liberty a request for production, seeking all communications between Liberty and Berman regarding the prior action against the insureds. After consulting with the insureds, Liberty informed the Ghios that the insureds claimed that the responsive documents in Liberty's possession were protected by the attorney-client privilege. On August 6, 2019, after a discovery conference, the court, *Moukawsher, J.*, ordered Liberty to produce all communications between Liberty and Berman that are statements of fact or relate to the issue of insurance coverage. Thereafter, the insureds reviewed the relevant documents, redacted portions of those documents, and instructed Liberty as to which documents to withhold entirely. Liberty complied with the insureds' instruction and provided the documents and a privilege log to the Ghios.

On November 25, 2019, the Ghios moved for summary judgment on the first count of their amended complaint seeking to enforce the stipulated judgment. In that motion, the Ghios relied on certain privileged communications between Berman and Lane in support of their argument that the settlement was reasonable. As acknowledged by the insureds in their brief to this court, Berman disclosed three of those communications to the Ghios pursuant to the stipulated judgment in the prior action. In a February 7, 2020 e-mail, Attorney Bonnie Hoffman, counsel for Liberty, notified the insureds that Liberty would seek the court's permission to produce and disclose all communications between Berman and Liberty regarding the merits of the Ghios' claims in the prior action because the insureds had waived the attorney-client privilege by producing some communications on the same subject. Hoffman claimed that Liberty was

entitled to use these communications to defend itself in the underlying action because the Ghios had relied on some of Berman's communications regarding the merits of the prior action in their motion for summary judgment. In response, Attorney Erik Beard, counsel for the insureds, requested that Hoffman identify the specific documents that she asserted constituted waiver of the privilege, and Hoffman identified six documents, two of which had been included in the Ghios' motion for summary judgment.

At a March 6, 2020 hearing, the court heard argument on several matters, including the Ghios' motion to strike Liberty's counterclaim and the privilege issue. At the outset of the hearing, the Ghios' attorney noted that the court had a limited amount of time because it was presiding over a trial that morning, and the court proceeded to hear the parties on the motion to strike. Before turning to the claimed waiver of the attorney-client privilege, the court stated, "Let's try to move as quickly as we can because I'm running short of time." Attorney Ronald P. Schiller, counsel for Liberty, proceeded to argue that the privilege had been waived because the insureds disclosed some of Berman's communications with Liberty regarding the merits of the Ghios' claims in the prior action but claimed that other communications on the same subject were privileged. In addition, Schiller claimed that Berman's communications regarding the merits of the Ghios' claims in the prior action had been put at issue in the underlying action because the Ghios are "saying [Liberty was] unreasonable and they're relying on Berman's communications that he did share with them. And so, yes, it bleeds into the waiver issue, but it also bleeds into what they're relying on, Your Honor . . . ."

On behalf of the insureds, Beard denied that any waiver occurred and claimed that the only documents identified by Liberty as constituting waiver "were documents relating to coverage issues, exclusively. They were the back and forth in October, 2018, between Liberty . . . and Attorney Berman about the declination of coverage letters and the positions that were taken." The court then engaged in the following exchange with Schiller and Beard:

"The Court: Okay, can I stop you right there so that we can see—is there a perfect example in terms of the document—

"[Schiller]: Yes.

"The Court: —of what you claim Berman did to waive the privilege?

"[Schiller]: Yes.

"The Court: Just give me a document and tell me what it says.

"[Schiller]: Yes, Your Honor, and I have a notebook

where we have the documents at issue, and it's not just the six . . . .

"The Court: Well, I just want one.

"[Schiller]: Okay.

"The Court: Can you . . . just give me your very best one that would say Berman provided . . . a document that shows his advice and it—and it opens the door?

"[Schiller]: Okay. And to be clear, this is post Beard's redacting and what he redacted were sometimes things that were just critical of judges or critical of [the Ghios' attorney]. They were—they did not go to the merits . . . .

"[A]nd I don't have a Bates number, so I'm going to give you the e-mail date and time.

"The Court: Yeah just tell me what it says. That's what I'm more interested in.

"[Schiller]: Okay. It's Joshua Berman to Eileen Leviton. She's at Liberty LIU, dated September 26, 2017: 'It pains me to offer [the Ghios] a single red cent in response to their extortionate and unsupportable legal claim.' There's a reference to the demand. 'The guy has no case and is making offers like this,' referring to a demand from [the Ghios' attorney].

"The Court: All right. I—that's enough.

"[Schiller]: 'The offer should be a nonstarter.'

"The Court: I—I heard it.

"[Beard]: Two—two things, actually.

"The Court: How can you argue that that isn't about the merits?

"[Beard]: Two things, Your Honor, actually.

"The Court: Yeah.

"[Beard]: That particular e-mail that he is reading, and he's not putting it in context, was a coverage dispute about whether [defending] a motion for sanctions would be covered by Liberty . . . .

"The Court: But whatever it does, it—it is the lawyer's statements about the—the quality of the case.

"[Beard]: And—and Your Honor, I will not dispute that if that is deemed privileged information, that one sentence, then it's waived, it's out there; but that does not open the door under—

"The Court: Well, not the sentence, it's the topic; in other words, if—if what's going to happen is that—that certain evidence is going to come in where Attorney Berman makes his statements concerning the relative strengths and weaknesses of the case as that does, then why don't they all come in?

"[Beard]: Because, Your Honor, if you look at [*In re*

*von Bulow*, 828 F.2d 94 (2d Cir. 1987] out of the Second Circuit, which is a case that deals with this idea of subject matter and implied waiver. What the—what that case says, and it's been cited by a lot of Connecticut court cases, but what that case says is when a—when the disclosure is made not to—essentially to use the—the language earlier, not to yield a sword and a shield.

"So, we did not disclose anything in this case as a party to this case. We're not disclosing it to produce—to prove a claim that we have in this case. We're not disclosing it to—or withholding anything to prevent somebody else from hurting—helping their claim or defense.

"The Court: Well—well, wait a minute, let me stop you there, because what—I mean, in other words, you—the insured, the Back9 insureds made a deal with [the Ghios], and now they're saying, 'Well, maybe we didn't make such a good deal.'

"And Berman's saying, 'You know, here's some stuff, you can use this.'

"And now, Liberty's saying, 'You give [them]—sent [them] some things to help [their] case, then you got to give us everything.'

"[Beard]: They—

"The Court: That's their argument. . . .

"[Beard]: I still maintain the stuff that was given to them, except for very conclusory language, which by the way, Your Honor, every lawyer in the world when negotiating a case says to the other side, 'Your case has no merit. Your case isn't worth what you think it's worth.'

"The Court: Is this an e-mail to the other side?

"[Beard]: No, no—

"[Schiller]: No, this was to Liberty on Berman's assessment.

"[Beard]: My point—

"[Schiller]: And just, Your Honor, there are dozens of these. There's literally no viable case. Plaintiff's counsel is milking his client for every penny he can in fees and he's showing no signs of discontinuing the non-claim. On the contrary, his tactic is to litigate as vexatious[ly] as possible for the sole purpose of extorting money from Liberty. I have dozens of—

"The Court: This is an e-mail delivered to Liberty.

"[Schiller]: Yes.

"The Court: So it's not to the other side.

"[Beard]: That's my point, though, is, Your Honor, is that worst case scenario, we say something like that to the other side in a litigation, nobody claims that that

statement means that it opens up the door for all the underlying internal analysis of the lawyer. No plaintiff's lawyer would ever come into court and say, 'Your Honor, in our settlement negotiations, they told me that I don't have a case. Therefore, I get to know everything that led to that conclusion.' That's not the case. But back to . . . Your Honor's point . . . these disclosures were made in an extrajudicial context as to . . . the Back9 insureds. We're not a part [of] this case. We complied with the court's order to produce coverage information and statements of fact.

"The Court: Well, you were a witness claiming, apparently, attorney-client privilege as a reason that you don't have to produce documents.

"[Beard]: That's correct.

"The Court: And then I'm confronted with a situation where the claim is, and it seems to be supported, that you gave some of the documents to the other side in the case, and now you want to . . . not give them to Liberty.

"[Beard]: We did not give to the other side any documents that, for example, delve into the—the analysis of the legal strengths and weaknesses of the case. We did not give [the Ghios] anything other than . . . Schiller . . . has represented to the court. And I will also add that if he's about to bring out an entire notebook, I did ask for that information and I got six e-mails. That's what I got.

"[Schiller]: He has the notebook, Your Honor. He's the one who went through them and took out all the disparaging—

"The Court: All right.

"[Schiller]: And Your Honor, just the point is, we have these documents. They cherry-picked a small group of documents from one period of time where they say, 'Hey Liberty, you have to settle this case now,' because they cut a deal with [the Ghios], or because they wanted to cut a deal with [the Ghios]. And those documents say, and [the Ghios are] going to use them as [they] have a right to, but now they don't want me to use the rest of them and [they have] all these documents."

Before hearing from the Ghios' attorney, the court noted that it was "right about out of time." The Ghios' attorney then explained, "We've had all kinds of discovery, we've had motions for summary judgment filed with all of the essentials of those summary judgments being teed up, and now they want to revisit discovery. And I don't even know that I got the e-mails that counsel is referring to."

The court allowed Beard to offer closing remarks, and the following exchange occurred:

"[Beard]: [W]e have . . . a real tangible concern

about whether or not this throws the door open to all of the underlying analyses of the legal strengths and weaknesses of the [Ghios'] case, and what [their attorney] said at the beginning of today's hearing only underscores it, which is he's not ruling out the fact that if things don't go his way in this case, he's going to come back and try to drag my clients back into court on the underlying case. And if all of this comes out, suddenly he's got the entire roadmap for everything that we were going to do in the underlying case.

"The Court: Perhaps Berman should've thought carefully about that possibility before he started providing documents to the [Ghios] here.

"[Beard]: Well—but, Your Honor, the documents, as I said, that we provided were either coverage documents which I would argue are not privileged.

"The Court: Look, it's already established that that's not the limit of them.

"[Beard]: Or . . . they were conclusory documents that to the extent of what was said is waived; but as the Second Circuit in the *von Bulow* case says, the stuff that was not disclosed remains confidential and privileged because we are not a party to this case, period."

After hearing from Hoffman, Liberty's cocounsel, regarding Liberty's delay in raising the waiver issue, the court issued its ruling, stating: "I am convinced by what I have heard today, in particular the nature of the documents that were disclosed to the [Ghios] by Attorney Berman, that it discusses the substance of . . . the analysis that he gave with respect to the merits of the other case; and once you open that door to certain of his comments, you're bound to provide the rest of them as well. It would simply be, and this is the basic guide, an injustice here to allow one side to have a selected number of . . . those comments and not allow the other side to have them.

"I suggest in this instance a specific written order is appropriate, so I'd ask [Liberty] to provide a proposed order for me to execute." Although the court never issued a written order, it signed the transcript of its oral decision after this writ of error was filed.

It is clear from our review of the transcript that the court never reviewed the notebook of documents on which Liberty relied for its claim of waiver or the six documents that were exchanged between Beard and Hoffman when Hoffman first raised the waiver issue. Instead, it appears that the court based its decision solely on the brief excerpts read aloud by Schiller at the hearing. The court also did not conduct an in camera review of the undisclosed documents to determine which were encompassed by the subject matter waiver.

The insureds filed a motion for reconsideration and

a supporting memorandum of law, claiming that the court's discovery order "was premised on several misapprehensions of fact" and that the court "failed to consider critical legal authority" in issuing its ruling. Specifically, the insureds claimed that, at the March 6, 2020 hearing, Schiller improperly read and relied on redacted portions of one of the e-mails that the insureds had produced in response to the court's August 6, 2019 discovery order. As to that excerpt, the insureds argued that they could not be found to have waived the privilege when they specifically instructed Liberty to withhold as privileged the precise language Schiller improperly read at the hearing. The insureds further maintained that the only communications actually disclosed concerned coverage issues and invited the court to conduct an in camera review of the relevant documents. They further claimed that the disclosures at issue were made in an extrajudicial context and, therefore, that under *In re von Bulow*, supra, 828 F.2d 102–103, a broad subject matter waiver was inappropriate.[4]

Liberty filed an objection, explaining that, before reading from the redacted e-mail, Schiller informed the court that he was referencing a document that had been redacted by the insureds. Liberty further explained that Schiller then read a portion of a second e-mail from Berman to Liberty, which had been provided to the Ghios pursuant to the court's discovery order, to demonstrate the claimed waiver. We note that neither of these e-mails was included in the Ghios' motion for summary judgment. Liberty also denied that the insureds' disclosures occurred in an extrajudicial context, noting that the insureds had disclosed communications pursuant to the stipulated judgment in the prior action before disclosing additional communications pursuant to the court's August 6, 2019 discovery order. Liberty emphasized that, in *In re von Bulow*, supra, 828 F.2d 102, the Second Circuit Court of Appeals distinguished disclosures made in a trial setting from extrajudicial disclosures and held that "extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication."

On May 4, 2020, the court issued an order denying the motion for reconsideration, stating: "The court agrees with and adopts the reasoning of the objection to the motion. The court understood the facts and applied the applicable law in making its ruling. Its ruling was correctly aimed at preventing a party to this litigation from offering an attorney's advice as evidence selectively, offering the advice that favors the current claim while opposing the discovery of other advice from the same source that might disfavor the current claim." This writ of error followed.

I

As a threshold matter, because neither this court nor our Supreme Court has considered the applicability of the subject matter waiver rule, we must determine whether the court properly concluded that the rule applies in Connecticut. For the reasons that follow, we adopt the subject matter waiver rule.

We first set forth our standard of review. "Whether the trial court properly concluded that there is an exception to the attorney-client privilege . . . and, if so, whether it properly delineated the scope and contours of such an exception, are questions of law. . . . Accordingly, our review of these issues is plenary." (Citation omitted.) *Hutchinson* v. *Farm Family Casualty Ins. Co.*, 273 Conn. 33, 38, 867 A.2d 1 (2005).

The subject matter waiver rule provides that the "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject. . . . Under this rule, disclosure of information resulting in the waiver of attorney-client privilege constitutes waiver only as to communications about the matter actually disclosed." (Citations omitted; internal quotation marks omitted.) *United States* v. *Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020). "The purpose underlying the rule of partial disclosure is one of fairness to discourage the use of the privilege as a litigation weapon in the interest of fairness. A party should not be permitted to assert the privilege to prevent inquiry by an opposing party where the professional advice, itself, is tendered as a defense or explanation for disputed conduct." *Zirn* v. *VLI Corp.*, 621 A.2d 773, 781–82 (Del. 1993).

"Courts have characterized this reasoning as the sword and the shield approach, in that a litigant should not be able to disclose portions of privileged communications with his attorney to gain a tactical advantage in litigation (the sword), and then claim the privilege when the opposing party attempts to discover the undisclosed portion of the communication or communications relating to the same subject matter." (Internal quotation marks omitted.) *Center Partners, Ltd.* v. *Growth Head GP, LLC*, 981 N.E.2d 345, 357 (Ill. 2012).

The subject matter waiver rule is applied uniformly in the federal courts pursuant to rule 502 (a) of the Federal Rules of Evidence, which provides, "[w]hen the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." The advisory committee notes to rule 502 (a) explain that

"a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."[5]

"In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. . . . The privilege fosters full and frank communications between attorneys and their clients and thereby promote[s] the broader public interests in the observation of law and [the] administration of justice. . . . The privilege applies, however, only when necessary to achieve its purpose; it is not a blanket privilege." (Citation omitted; internal quotation marks omitted.) *State* v. *Kosuda-Bigazzi*, 335 Conn. 327, 342, 250 A.3d 617 (2020).

"Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 52, 730 A.2d 51 (1999); see also *Ullmann* v. *State*, 230 Conn. 698, 713, 647 A.2d 324 (1994) (because "the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose" (internal quotation marks omitted)).

It is well established that "voluntary disclosure of the content of a privileged communication constitutes waiver of the privilege." (Internal quotation marks omitted.) *State* v. *Taft*, 258 Conn. 412, 421, 781 A.2d 302 (2001). The privilege belongs to the client and may be waived only by the client or his attorney acting with the client's authority. See *Gebbie* v. *Cadle Co.*, 49 Conn. App. 265, 274, 714 A.2d 678 (1998). "[I]f the holder of the privilege fails to claim his privilege by objecting to disclosure by himself or another witness when he has an opportunity to do so, he waives his privilege as to communications so disclosed. . . . This result is reached because once the confidence protected has been breached, the privilege has no valid continuing office to perform." (Citation omitted; internal quotation marks omitted.) Id.

Although there is no appellate authority in this state applying the subject matter waiver rule, our Supreme Court has recognized the related doctrine of implied waiver, which is founded on the same fairness considerations justifying the subject matter waiver rule. See *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 249 Conn. 52–53. The implied waiver rule "is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the

action. . . . Such is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship. In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice." (Citation omitted; footnotes omitted.) Id.

The implied waiver rule "rest[s] on the fairness principle, which is often expressed in terms of preventing a party from using the privilege as both a shield and a sword. . . . In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." (Internal quotation marks omitted.) *United States* v. *Sanmina Corp.*, supra, 968 F.3d 1117; see also *People* v. *Trujillo*, 144 P.3d 539, 543 (Colo. 2006) ("[t]he rationale for an implied waiver . . . is that the law will not permit a client to use as a sword the protection which is awarded him as a shield" (internal quotation marks omitted)).

As the Second Circuit Court of Appeals has explained, the "subject matter waiver [rule] . . . is simply another form of the waiver by implication rule . . . . Like the implied waiver, the subject matter waiver also rests on the fairness considerations at work in the context of litigation. . . .

"For this reason, it too has been invoked most often where the privilege-holder has attempted to use the privilege as both a sword and a shield or where the attacking party has been prejudiced at trial." (Citation omitted; internal quotation marks omitted.) *In re von Bulow*, supra, 828 F.2d 102–103; see also *In re Keeper of Records* (*Grand Jury Subpoena Addressed to XYZ Corp.*), 348 F.3d 16, 24 (1st Cir. 2003) ("[C]ourts have identified a common denominator in waiver by implication: in each case, the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information would have been unfair to the opposing party. . . . Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process." (Citations omitted; internal quotation marks omitted.)).

Thus, the subject matter waiver rule is consistent with this state's precedent recognizing that, because "the [attorney-client] privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose."

(Internal quotation marks omitted.) *Ullmann* v. *State*, supra, 230 Conn. 713.

In addition, our Supreme Court has rejected the doctrine of selective waiver, which allows a client to disclose privileged communications to certain individuals while maintaining the privilege as to others. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 60–61, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009). In *Rosado*, the court reasoned that a client "cannot be permitted to pick and choose among [its] opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." (Internal quotation marks omitted.) Id., quoting *Permian Corp.* v. *United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981). This reasoning also supports the application of the subject matter waiver rule, which serves to prevent a party from strategically using the attorney-client privilege to further the client's interests by selective disclosure of otherwise privileged information. See, e.g., *Center Partners, Ltd.* v. *Growth Head GP, LLC*, supra, 981 N.E.2d 357 ("[t]he purpose behind the doctrine of subject matter waiver is to prevent partial or selective disclosure of favorable material while sequestering the unfavorable").

Thus, because the subject matter waiver rule is consistent with this state's precedent and is based on the same fairness principle supporting the implied waiver rule, we adopt it as the law in this state. We find that rule 502 (a) of the Federal Rules of Evidence provides the proper analytical framework for analyzing whether a subject matter waiver has occurred in a particular case.[6] Accordingly, we hold that the voluntary disclosure of a privileged attorney-client communication constitutes a waiver of the privilege as to all other communications concerning the same subject matter when the trial court determines that the waiver was intentional and that fairness dictates that the disclosed and undisclosed communications be considered together. Because the waiver must be intentional, "an inadvertent disclosure of protected information can never result in a subject matter waiver." Fed. R. Evid. 502, advisory committee notes.

Finally, if the trial court finds that the subject matter waiver rule applies, it must determine the scope of the waiver, which necessarily involves a fact intensive inquiry into the nature of the disclosed communications, as well as those communications withheld as privileged. See *Fort James Corp.* v. *Solo Cup Co.*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005) ("[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circum-

stances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures"), cert. denied, 547 U.S. 1069, 126 S. Ct. 1768, 164 L. Ed. 2d 515 (2006). Consequently, where a party asserts that the subject matter waiver rule applies on the basis of disclosed communications, a court must review the relevant disclosed and undisclosed communications to determine whether a subject matter waiver has occurred and, upon finding waiver, to define the scope of the waiver. In this regard, the central question for the court is whether the disclosed and undisclosed communications "ought in fairness to be considered together." Fed. R. Evid. 502 (a) (3). The court must exercise its discretion in defining the category of information for which the privilege has been waived, mindful of the fairness principle supporting the subject matter waiver rule—that it would be unfair to allow the privilege to be used as both a sword and a shield.

## II

Having determined that the subject matter waiver rule applies in Connecticut, we now consider the insureds' claim that the court improperly found that they waived the attorney-client privilege in the present case. The insureds argue that (1) the subject matter waiver rule does not apply when privileged communications were disclosed in compliance with a court order, (2) Liberty had a duty to preserve the privilege and, therefore, could not have waived the insureds' privilege by producing the communications, and (3) the court abused its discretion in finding that the privilege was waived without holding an evidentiary hearing and reviewing the relevant communications. Because we conclude that the insureds' third argument is dispositive, we address it first.

## A

The insureds argue that the court abused its discretion because it failed to conduct an evidentiary hearing or in camera review of the claimed privileged communications before finding that the insureds had waived the privilege as to those documents. The insureds contend that the court misunderstood the nature of the disclosures and failed to review the relevant documents after the insureds alerted the court to the apparent misunderstanding in their motion for reconsideration. Liberty responds that the court, in its order denying reconsideration, expressly stated that it understood the facts. Liberty also claims that, to the extent there was any confusion, the facts in the record establish that the insureds waived the privilege by selectively disclosing communications regarding the merits of the Ghios' claims in the prior action. We agree with the insureds.

As a preliminary matter, we address the applicable standard of review. The insureds argue that the abuse of

discretion standard applies, whereas Liberty contends that, because the insureds essentially challenge the court's factual finding that they waived the privilege, the clearly erroneous standard applies. Although the insureds, in arguing that an evidentiary hearing or in camera review was required, assert that the court "misunderstood the actual facts and circumstances surrounding the disclosures," they expressly state that the "court's decision cannot stand without at least an evidentiary hearing or an in camera review of the privileged communications." Thus, the insureds are challenging the court's refusal to conduct an evidentiary hearing or in camera review of the privileged communications, not the court's factual findings.

When an appellant claims that the court erred in failing to conduct an evidentiary hearing, this court "consistently [has] held that, unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *DeRose* v. *Jason Robert's, Inc.*, 191 Conn. App. 781, 797, 216 A.3d 699, cert. denied, 333 Conn. 934, 218 A.3d 593 (2019). Therefore, we agree with the insureds that the abuse of discretion standard applies to this claim.

Under the abuse of discretion standard, "[w]e must make every reasonable presumption in favor of the trial court's action. . . . The trial court's exercise of its discretion will be reversed only [when] the abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Erickson*, 297 Conn. 164, 176, 997 A.2d 480 (2010).

In the present case, the court considered the subject matter waiver issue during a portion of a short hearing regarding multiple issues. The entire discussion of the waiver issue is contained in eighteen pages of the fifty-four page transcript of the hearing, and the court never reviewed the communications at issue. Instead, the court noted that it had a limited amount of time to hear the parties on the issue and told Schiller to "just give me your very best one that would say Berman provided a document that shows his advice . . . ." In a somewhat confusing exchange, Schiller read two communications from Berman to Liberty; the first communication was not disclosed to the Ghios, but the second one was disclosed.[7] After Schiller read the undisclosed communication, but before he read the disclosed communication, the court interjected: "All right. I—that's enough." Schiller then read the disclosed communication, and the court stated, "I heard it."

We conclude that the court abused its discretion by failing to review the actual documents on which the claim of waiver was based. Instead, the court relied on Schiller's reading of excerpts from two documents, one

of which should not have been read because the insureds had instructed Liberty to redact the excerpt and not to produce it to the Ghios. It is unclear from the record how much weight the court placed on the excerpt that should not have been read versus the excerpt that had been produced. In addition, Liberty claimed that it had a notebook full of dozens of documents evidencing the privilege waiver. The insureds disputed Liberty's characterization of those documents. Despite this factual dispute, the court did not review any of the documents. As previously noted in this opinion, determining whether there was a waiver of the attorney-client privilege and defining the scope of any such waiver is a fact intensive inquiry. Given the parties' respective and conflicting positions regarding the import of the documents at issue, the court was required to review the relevant communications before issuing its oral ruling finding that the insureds had waived the privilege as to all communications regarding Berman's analysis of the merits of the Ghios' claims.

In short, given the significance of the privilege and the factual nature of the inquiry, the court's cursory consideration of the issue without reviewing the relevant documents was inadequate. Furthermore, if the court, following a review of the documents, had determined that there had been a subject matter waiver, the court would then have to conduct an in camera review of the claimed privileged documents and "weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures" to determine which documents were covered by the waiver and should be produced. *Fort James Corp.* v. *Solo Cup Co.*, supra, 412 F.3d 1349–50. The court conducted no such review. Accordingly, we remand the case for an evidentiary hearing.

B

Although our resolution of the insureds' third claim is dispositive of this writ of error, we address their remaining claims because they are likely to arise on remand. The insureds claim that the subject matter waiver may not be applied in the present case because (1) the communications were produced pursuant to a court order, (2) Liberty had a duty to preserve the privilege and, therefore, could not have waived the insureds' privilege by producing the communications, and (3) the insureds are not parties to the underlying action.[8] These claims implicate the scope and contours of the subject matter waiver rule and, therefore, our review is plenary. See *Hutchinson* v. *Farm Family Casualty Ins. Co.*, supra, 273 Conn. 38 (whether court properly delineated scope and contours of exception to attorney-client privilege is question of law).

1

First, relying on several federal cases, the insureds argue that, "when a person discloses privileged communications only after being compelled to do so, it cannot be said that the privilege holder sought to gain an unfair advantage through selective disclosure." They argue that a "good faith effort to comply with a court order . . . should not serve as the basis for a subject matter waiver." We are not persuaded.

As previously noted in part I of this opinion, only the *voluntary* disclosure of a privileged attorney-client communication constitutes a waiver of the privilege as to all other communications concerning the same subject matter. When a client is ordered by a court to disclose a privileged communication, the disclosure of that communication would not be a voluntary waiver of the privilege. In the present case, however, Liberty argues that the insureds disclosed privileged communications that were not subject to the court's discovery order and that they did so in order to assist the Ghios in their action against Liberty. In fact, Liberty did not raise the waiver issue until the Ghios filed a motion for summary judgment that included three communications between Berman and Liberty, which the insureds acknowledge were provided to the Ghios *before* the court issued its discovery order. Thus, those communications were not produced pursuant to the court's order. Furthermore, because of the cursory manner in which the court resolved the waiver issue, it is unclear from the record whether Liberty is relying on other voluntary disclosures made by the insureds that were made beyond the scope of the court's August 6, 2019 discovery order. Consequently, on remand the court must determine which privileged communications were voluntarily disclosed by the insureds and whether fairness requires that the voluntarily disclosed communications and any undisclosed communications regarding the same subject matters be considered together.

2

Second, the insureds contend that, as a matter of law, because Liberty had a duty to preserve the privilege, Liberty could not have waived the insureds' privilege by producing the communications. They argue that, pursuant to the common interest doctrine,[9] Liberty had a duty to preserve the privilege by not disclosing privileged communications, and its failure to so preserve the privilege could not constitute a subject matter waiver of the insureds' privilege. We are not persuaded.

First, this argument ignores the fact that the insureds directly produced privileged communications to the Ghios, which the Ghios then used in support of their motion for summary judgment. Therefore, the insureds waived the attorney-client privilege independent of any action of Liberty. Second, to the extent that there was an additional waiver when Liberty produced documents

in response to the court's order, there is no dispute that the insureds, after reviewing and redacting the documents to their satisfaction, instructed Liberty to disclose the communications at issue. Liberty satisfied its duty to preserve the privilege by relinquishing control of the production of the communications to the insureds, thereby allowing the insureds to decide which communications to disclose pursuant to the court's discovery order. Accordingly, although Liberty produced the relevant communications, it is undisputed that Liberty produced only those communications that the insureds instructed it to produce. Accordingly, this claim fails.

3

Finally, the insureds assert that the subject matter waiver rule should not apply here, because they are not parties to the underlying action and, therefore, "there is no unfair advantage for them to gain . . . ." We disagree.

In the present case, although the insureds are not parties to the litigation, there is no dispute that they assigned their rights under the policy to the Ghios in order to settle the prior action brought against them. This alone would suggest that the insureds have an interest in the underlying action notwithstanding their lack of party status. Moreover, this assertion is undermined by Beard's representations before the court that the insureds had "a real tangible concern about whether or not this throws the door open to all of the underlying analyses of the legal strengths and weaknesses of the underlying case, and what [the Ghios' attorney] said at the beginning of today's hearing only underscores it, which is he's not ruling out the fact that if things don't go his way in this case, he's going to come back and try to drag [the insureds] back into court on the underlying case. And if all of this comes out, suddenly now he's got the entire roadmap for everything that we were going to do in the underlying case."

Furthermore, the subject matter waiver rule properly may be applied to a nonparty if the court determines that "*the privilege-holder* has attempted to use the privilege as both a sword and a shield or where the attacking party has been prejudiced at trial." (Emphasis added; internal quotation marks omitted.) *In re von Bulow*, supra, 828 F.2d 102–103. In other words, because the focus of the rule is on the abuse of the privilege by the privilege holder, it may be applied where the privilege holder, although not a party to the litigation, has attempted to use the privilege as a sword and a shield.

The writ of error is granted and the case is remanded with direction to hold an evidentiary hearing to determine whether to apply the subject matter waiver rule and, if the rule applies, to identify specifically which documents must be produced.

In this opinion the other judges concurred.

[1] After the parties filed their briefs, this court, sua sponte, ordered them to file supplemental briefs addressing whether the court's discovery order is a final judgment. See Practice Book 72-1 (a) ("[w]rits of error for errors in matters of law only may be brought from a final judgment of the Superior Court to the Appellate Court"). We conclude, and the parties agree, that the court's discovery order is immediately appealable under the second prong of the finality test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983).

"[A]n order issued upon a motion for discovery ordinarily is not appealable because it does not constitute a final judgment, at least in civil actions. . . . Typically, a nonparty must be found in contempt of a discovery order before it may appeal that ruling. . . .

"Nevertheless, appellate courts may deem interlocutory orders or rulings, including discovery rulings, to have the attributes of a final judgment if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, [supra, 191 Conn. 31]. . . . Under *Curcio* . . . interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding or (2) so concludes the rights of the parties that further proceedings cannot affect them." (Citations omitted; internal quotation marks omitted.) *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 730, 207 A.3d 493 (2019); see also *Abreu* v. *Leone*, 291 Conn. 332, 346, 968 A.2d 385 (2009) ("an order issued upon a motion for discovery ordinarily is not appealable because it does not constitute a final judgment, and . . . a witness' only access to appellate review is to appeal a finding of contempt").

In the present case, Liberty has possession of the privileged documents and, therefore, is able to provide them to the Ghios or make use of them itself pursuant to the court's order. Thus, because the insureds are unable to withhold the documents and be found in contempt, from which judgment they could appeal, we conclude that the court's order of production so concludes their rights to maintain the privilege that no further proceedings before the court can affect them. Cf. *Redding Life Care, LLC* v. *Redding*, supra, 331 Conn. 739 (finding that further proceedings could affect plaintiff in error because he "may be held in contempt by the trial court for failing to comply with the discovery order, which then would constitute an appealable final judgment"). Accordingly, this court has jurisdiction over the writ of error.

[2] The Ghios also named the following additional defendants: Berman and his law firm, White & Case, LLP; Back9; the insureds; and Attorney R. Stacy Lane, Liberty's attorney, and his law firm, Bailey Cavalieri, LLC. The court, *Moukawsher, J.*, granted the motions to dismiss filed by the additional defendants, leaving Liberty as the sole remaining defendant.

[3] General Statutes § 38a-321 provides in relevant part: "Upon the recovery of a final judgment against any person, firm or corporation by any person . . . for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[4] On appeal, the insureds have abandoned their claim that the disclosures to the Ghios were made in an extrajudicial context.

[5] Several state courts also apply the subject matter waiver rule. See, e.g., *Citadel Holding Corp.* v. *Roven*, 603 A.2d 818, 825 (Del. 1992) ("It is clear that the disclosure of even a part of the contents of a privileged communication surrenders the privilege as to those communications. . . . The so-called rule of partial disclosure limits the waiver to the subject matter of the disclosed communication." (Citations omitted; internal quotation marks omitted.)); *In re Grand Jury January 246*, 272 Ill. App. 3d 991, 997, 651 N.E.2d 696 ("where a client reveals portions of her conversation with her attorney, those revelations amount to a waiver of the attorney-client privilege as to the remainder of the conversation or communication about the same subject matter"), appeal denied, 163 Ill. 2d 558, 657 N.E.2d 622 (1995); *Miller* v. *Continental Ins. Co.*, 392 N.W.2d 500, 504–505 (Iowa 1986) ("voluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject"); *Smith* v. *Kavanaugh, Pierson & Talley*, 513 So. 2d 1138, 1144 (La. 1987) ("[t]he introduction into evidence of documents disclosing privileged communications also waives

the privilege against testimony or production of further documents disclosing communications on the same subject"); *Marshall* v. *Marshall*, 282 S.C. 534, 538, 320 S.E.2d 44 (App. 1984) ("[a]ny voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed but also to all communications between the same attorney and the same client on the same subject").

[6] Although rule 502 (a) of the Federal Rules of Evidence also applies to waiver of the work product protection, our holding is limited to the waiver of the attorney-client privilege, as that is the only issue presented in this writ of error.

[7] This exchange was confusing because, before reading from the undisclosed communication, Schiller stated that "this is post . . . Beard's redacting . . . ." Ordinarily, "post redacting" would mean that the excerpt being read was disclosed after other portions of the document had been redacted.

[8] Although Liberty argues that these claims are unpreserved and, therefore, we should decline to review them, we address them because they likely will arise on remand. See, e.g., *State* v. *Manuel T.*, 337 Conn. 429, 437 n.7, 254 A.3d 278 (2020) ("[i]n light of our conclusion . . . that the defendant is entitled to a new trial due to the improper exclusion of the text messages, we would address the proper standard for admission of this evidence even if the issue was unpreserved, as it would be likely to arise on remand").

[9] "[T]he common interest doctrine extend[s] the attorney-client privilege to any privileged communication shared with another represented party's counsel in a confidential manner for the purpose of furthering a common legal interest." (Internal quotation marks omitted.) *Hanover Ins. Co.* v. *Rapo & Jepsen Ins. Services, Inc.*, 449 Mass. 609, 612, 870 N.E.2d 1105 (Mass. 2007).